UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CHRISTOPHER K. SINGH,                                 :
                                                      :      Case No. 2:24-cv-05320
                              Plaintiff,              :
                                                      :      **COMPLAINT**
              - against -                             :
                                                      :      **JURY DEMANDED**
NATIONAL BOARD OF MEDICAL EXAMINERS,                 :
FEDERATION OF STATE MEDICAL BOARDS, and             :
USMLE SECRETARIAT,                                   :
                                                      :
                              Defendant.              :
-----------------------------------------------------------------------X

        Plaintiff Christopher K. Singh ("Dr. Singh"), alleges as follows:

                                **INTRODUCTION**

        1.      This is action brought by Dr. Singh, an accomplished physician who suffered

severe post-traumatic stress disorder ("PTSD") after his pregnant wife was shot in their home.

Dr. Singh seeks an injunction compelling defendants National Board of Medical Examiners, the

Federation of State Medical Boards, and the USMLE Secretariat (collectively, "Defendants") to

provide him with an opportunity retake the USMLE Step-3 examination, which is required to

obtain a medical license in the United States and practice as the Orthopedic Surgeon he has

trained for sixteen years to become, to reasonably accommodate the debilitating condition he was

under when he failed previous administrations of the exam.  After years of treatment and therapy,

Dr. Singh managed to overcome his disability and requested another attempt to take the exam

without the cloud of severe PTSD impacting his performance.  Defendants, however, not only

denied his request, but refused to even consider its merits.  Instead, Defendants relied on a rigid

and unlawful policy that prohibits such accommodations for disabilities in all cases bar none.  As

a result, if Defendants' illegal position stands, Dr. Singh will be denied the opportunity to ever

become a doctor, despite successfully completing not only college and medical school, but also a prestigious orthopedic surgery residency, all because Defendants refuse to even consider accommodating the disability he suffered after an incredibly traumatic life event.

2.  In the Spring of 2005, Christopher K. Singh received the distinction of Magna Cum Laude with a Bachelor of Arts Degree majoring in Biology from New York University. He was then accepted into medical school and pursued his Medical Degree at the highly esteemed Albert Einstein College of Medicine, part of Yeshiva University, located in the Bronx, New York. After graduating, Dr. Singh "matched" into the ultra-competitive and highly rigorous sub-specialty field of Orthopaedic Surgery and trained at Montefiore Orthopaedic Surgery Residency, also located in the Bronx, New York. Dr. Singh's training was augmented by a laboratory and clinical year of research in Orthopaedic Hand Surgery at the Hospital for Special Surgery, and further at Montefiore studying Pediatric Osteosarcoma with Dr. David Geller, Vice-Chairman of Orthopaedic Surgery.

3.  All told, Dr. Singh spent approximately sixteen years post-high school preparing to achieve his lifelong dream of practicing medicine, and more specifically Orthopaedic Surgery in an underserved community similar to the Bronx, where he spent the entirety of his medical training.

4.  Unfortunately, Dr. Singh was just shy of completing the standardized testing required to finish his training and become licensed as a physician capable of independent medical practice, when his pregnant wife was shot in their home. This event led to a deep state of depression combined with anxiety and disabling bouts with Post-Traumatic Stress Disorder (PTSD).

5.      It became difficult (and at times insurmountable) for Dr. Singh to accomplish simple activities of daily living, including to adequately prepare for, focus during, or ultimately obtain a passing score on his very last standardized examination required for licensure in the United States. In the fog of his disabling and unremitting depression, anxiety, and PTSD, Dr. Singh believed he had no choice but to "persevere" through his illness, and he ultimately exhausted the maximum permitted number of attempts at taking the exam without achieving a passing score. As a result of his disability, Dr. Singh is thus now permanently barred from obtaining a medical license in the United States after dedicating 16 years in post-secondary education and a fortune pursing this dream.

6.      After hundreds of hours of intense therapy over the course of years, Dr. Singh has managed to drastically reduce the severity and frequency of the symptoms of his depression, anxiety, and PTSD, practically to zero, such that he is now effectively no longer disabled. Yet, his request for a simple accommodation – one last chance to pass the exam, now that he is no longer disabled – was denied by Defendants National Board of Medical Examiners (NBME), Federation of State Medical Boards (FSMB) and the USMLE Secretariat (Secretariat, and collectively "Defendants"), the organizations that administer the exam, without any justification for their decision.  Instead, Defendants took the position that they may rely upon their limit in all cases bar none, without regard to any effect it may have on applicants with a disability, let alone on Dr. Singh, who demonstrated impeccable academic credentials and copious documentation of the severe PTSD he suffered after a clearly traumatic event and how that trauma rendered him unable not only to perform on the examination, but even to make an informed judgment as to whether to attempt to take the examination.

7.      By this Complaint, Dr. Singh seeks an injunction under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the New York State Human Rights Law, directing Defendants to cease discriminating against him, by granting him one last opportunity to pass the examination, now that he is no longer disabled, so that he can become a fully licensed physician, and fulfill his goal in helping reduce the worsening physician shortage that threatens the healthcare system as we know it. Dr. Singh alternatively seeks monetary damages to compensate him for the harm caused by Defendants' illegal conduct.

## PARTIES, JURISDICTION, AND VENUE

8.      Dr. Singh is a resident of the State of New York. He attended New York University, where he graduated Magna Cum Laude with a BA in Biology. Dr. Singh is a graduate of the Albert Einstein College of Medicine of Yeshiva University located in the Bronx, New York, and completed his residency training at the Montefiore Orthopaedic Surgery Residency, also located in the Bronx, New York.

9.      The National Board of Medical Examiners (the "NBME") is a District of Columbia not-for-profit organization headquartered at 3750 Market Street, Philadelphia, Pennsylvania.

10.     The Federation of State Medical Boards of the United States, Inc. (the "FSMB") is a Nebraska not-for-profit organization headquartered at 400 Fuller Wiser Road, Euless, Texas. The FSMB represents the state medical and osteopathic licensing boards across the United States and its territories, with its mission to promote "patient safety, the integrity of the practice of medicine, access to high-quality health care and regulatory best practices."

11.     Dr. Singh is informed and believes, and based thereon alleges, that the USMLE Secretariat ("Secretariat") is an entity of unknown type headquartered at 3750 Market Street, Philadelphia, Pennsylvania.

12.     The NBME, FSMB, and Secretariat together administer the Unites States Medical Licensing Examination ("USMLE"), a three-step examination, the successful completion of which is required for medical licensure throughout the United States. The NBME and FSMB, and on information and belief the Secretariat as well, are private entities that offer the USMLE to prospective physicians, and as such are subject to the non-discrimination and appropriate accommodation requirements of the Americans with Disabilities Act ("ADA").

13.     Defendants administer the USMLE throughout the country, including in the Eastern District of New York.

14.     Defendants engage in business in New York and this judicial district, and this action arises from those business activities.

15.     Upon information and believe, Defendants are recipients of federal financial assistance, including funds from the United States Department of Defense, the United States Veterans Administration, and the Uniformed Services University of Health Sciences. Defendants also benefit from the service of federal officials who serve on their committees and otherwise further their mission on the federal fisc. Defendants are therefore subject to Section 504 of the Rehabilitation Act.

16.     This action arises under the laws of the United States, specifically including the ADA, 42 U.S.C. § 12101 et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction for any state law claim arising out of the same case or controversy, under 28 U.S.C. § 1367.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because Dr. Singh is a resident of New York, the NBME is a District of Columbia not-for-profit corporation with a principal place of business in Pennsylvania, the FSMB is a

Nebraska not-for-profit corporation with a principal place of business in Texas, the Secretariat has its principal place of business in Pennsylvania, and the amount in controversy exceeds $75,000.

17.     Defendants are subject to personal jurisdiction in the State of New York as they have purposefully availed themselves of doing business in the State of New York by administering the USMLE to New York residents who intend to proceed with licensure in New York and around the country as medical physicians. Defendants hold a USMLE testing administration site in New York, and the acts of discrimination giving rise to this claim have taken place wholly or in part in this District.  The State of New York also requires applicants seeking a medical license to pass the USMLE in order to qualify for a fully independent practitioner medical license.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendants are doing business in this judicial district by virtue of administering the USMLE in this District.

## FACTUAL BACKGROUND

### A.  Physician Mental Health Struggles Are Exacerbating a National Physician Shortage

19.     Physician burnout and associated mental health struggles are a crisis that could potentially cripple an already overburdened healthcare system in the United States. The stigma that once prevented physicians from seeking mental health care is being addressed by the American Medical Association and other organizations, but there remains much work left to be done. Currently, at least forty percent of physicians report a reluctance to seek mental health care due to the stigma and potential discrimination by colleagues and employers should these issues become public.

20.     Physicians burdened with feelings of being overworked and underappreciated are experiencing burnout at an alarming rate. During a recent study, two out of every five practicing

physicians expressed planning to leave the field within the next five years due to feelings of physical and mental exhaustion combined with lack of adequate compensation. Currently, twenty-three medical boards across the country are making urgent changes to address the area of physician burnout and the necessity to acknowledge that doctors can (and should) be patients too.

21.     To further complicate the crisis, physician reimbursement from government programs and commercial insurance companies has fallen by more than twenty percent in recent years, while at the same time the cost of practice has increased, markedly reducing the financial incentives for current and prospective physicians.

22.     As a result, the United States faces a projected shortage of between 37,800 and 124,000 physicians within the next twelve years, according to "The Complexities of Physician Supply and Demand: Projections from 2019 to 2034," based on a report released by the Association of Medical Colleges.[1]  According to the report, the surgical specialties alone will witness a deficit potentially in excess of 30,000. That same study also concludes that the projected shortage is tragically even more extreme for certain vulnerable patient populations, including minority populations and people without medical insurance. Assuming health care use patterns among these vulnerable populations increased to meet those of other populations with fewer barriers to healthcare, the demand would rise such that the nation would face a shortfall of approximately 102,400 (13%) to 180,400 (22%) physicians by 2023, relative to the current supply.[2]

---

[1] *See* website of the American Medical Association (https://www.ama-assn.org/practice-management/sustainability/doctor-shortages-are-here-and-they-ll-get-worse-if-we-don-t-act).
[2] *Id.*

**B. Dr. Singh's Academic and Professional Background**

23.     Dr. Singh attended medical school at the Albert Einstein College of Medicine of Yeshiva University in Bronx, New York. Dr. Singh obtained the grade of "High Pass" in numerous courses, particularly in "hands-on" clerkship courses such as Family Medicine Clerkship, Pediatrics Clerkship, Psychiatry Clerkship, Surgery Clerkship, Neurology, and Medicine Sub-internship. He also received "High Passes" in all his away rotations done in Orthopaedics, demonstrating a clear passion for the field. Dr. Singh received no "Low Passes" or "Fails" during the entirety of his medical school career. Besides his academic coursework, Dr. Singh's bedside manner and patient interaction were always remarked as exemplary. He received his Doctor of Medicine degree in June 2011.

24.     Dr. Singh went on to receive post-medical school training (i.e., surgical residency) at Montefiore Medical Center Orthopaedic Surgery Program, which began in July 2011. At no time was Dr. Singh placed on probation, disciplined, or placed under investigation, or given negative reports by instructions; nor did he have any limitations or special requirements imposed on him because of academic performance issues, incompetence, disciplinary problems, or any other reasons. Dr. Singh completed his postgraduate medical education in June 2017.

**C. The USMLE Exam**

25.     Defendants sponsor the United States Medical Licensing Examination (USMLE), a standardized examination used to evaluate applicants' competence for purposes of medical licensure in the United States and its territories. State medical boards rely upon successful completion of the three USMLE component exams, or "Steps," as an integral element in the process of licensing physicians by establishing baseline medical knowledge to practice medicine independently in the United States.

26.     As indicated on the NBME's website, "[w]hile the individual licensing boards grant the license to practice medicine, all medical boards in the US accept a passing score on the USMLE as evidence that an applicant demonstrates the core competencies to practice medicine. As a result, healthcare consumers throughout the nation enjoy a high degree of confidence that their doctors have met a common standard." The USMLE is administered at locations around the world to individuals who are attending, or have attended, medical schools in the United States and abroad.

27.     As such, Defendants are subject to the requirements of Section 309 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12189, and related implementing regulations, 28 C.F.R. § 36.309, as well as all other requirements specified within Title III of the ADA, 42 U.S.C. § 12181 – 12189.

28.     Defendants impose limits on the number of attempts that can be made on each Step of the USMLE examination. Prior to July 2021, Defendants allowed six attempts per Step. Effective July 1, 2021, that limit was reduced to four. According to the USMLE website, "[e]xaminees who have attempted any USMLE Step . . . four or more times and have not passed are ineligible to apply for USMLE Steps." Defendants' rationale for the reduction, according to their website, is not based on principle, but rather that "it is uncommon for individuals with more than four repeated attempts on USMLE Steps to complete the examination sequence successfully, gain access to postgraduate training and ultimately receive a license to practice medicine in the United States."

29.     Notably, while Defendants impose a four-attempt limit, the actual State-by-State licensing bodies are not necessarily as restrictive. The New York State Medical Board, for example, which is relevant here because Dr. Singh intends to apply to practice in New York,

imposes no limit on the number of times an applicant may attempt each of the three USMLE

Step Examinations. As a practical matter, however, because Defendants control who may register

for and take the USMLE, it is not possible for an applicant to register for a Step exam once he or

she meets the four-attempt limit, regardless of the requirements of the individual's home state.

30.     Dr. Singh passed the USMLE Step 1 examination on his first attempt, on July 7,

2008, with a score of 231. (The minimum passing score was 185.)

31.     Dr. Singh passed the USMLE Step 2 CK examination on his first attempt, on July

22, 2009, with a score of 226. (The minimum passing score was 184.)

32.     Dr. Singh passed the USMLE Step 2 CS examination on his second attempt, on

August 10, 2011.[3]

**D.  A Life-Changing Traumatic Event and Resulting Disability**

33.     In March 2015, as Dr. Singh was in his post-graduate Residency program, his

then-pregnant wife was violently attacked in their home by an unknown intruder. The intruder

knocked at the door, and when Dr. Singh's wife went to answer, the intruder fired a gun through

the peephole in the apartment door directly at her.

34.     Dr. Singh's wife miraculously survived the attack, thankfully without serious

physical trauma to herself or to their unborn daughter who was at nine months of gestation at the

time. Nevertheless, Dr. Singh was distraught, scared, and at a loss, as he had never experienced

this kind of violence in his life to that point, and was wracked by feelings of guilt and shame for

having been unable to protect his family. (At the time of the attack, he had been interviewing for

a Sports Orthopaedic Surgery Fellowship for the next phase of his training.) The public nature of

the attack and ensuing investigation – which became a constant topic for gossip and ridicule

---

[3] This step of the exam was eliminated as a requirement as of January 2021.

amongst Dr. Singh's hospital coworkers – worsened the effects of this trauma on Dr. Singh's psychological and emotional state.

35.    Before long, Dr. Singh found himself spiraling into a deep depression combined with feelings of extreme anxiety. Dr. Singh lived in a persistent state of negative emotions, laden with shame, guilt and anger. He lost interest in participating in essential activities of daily living, making ordinary life much more difficult than it had been prior to the attack and subsequent public shaming.

36.    Throughout this period, Dr. Singh struggled with irritability and angry outbursts, self-destructive behavior, problems with concentration, and severe sleep/wake cycle disturbance. Lack of sleep and the resulting transient cognitive decline compounded to worsen Dr. Singh's shame, depression, and anxiety.

37.    Between the depression, PTSD-related anxiety and volatility, and temporary cognitive decline caused by lack of sleep, Dr. Singh's ability to concentrate, study, learn, and otherwise prepare for or take and pass the USMLE Step 3 examination (in addition to his other essential life activities) was substantially limited.  Indeed, there often were days when Dr. Singh was unable to get out of bed and accomplish simple activities of daily living, much less maintain the necessary focus to prepare for the Step 3 examination.

**E.  Dr. Singh Attempts to Resume USMLE Testing Despite the Disability**

38.    As a further effect of his depression and PTSD, Dr. Singh failed to conduct the necessary investigation to realize he had options besides "pushing through" and forcing himself to take the USMLE Step 3 examination despite the disabling mental health condition that prevented him from adequately preparing.

39.     Unsurprisingly in retrospect, Dr. Singh was unsuccessful in defeating the disability on his own. Despite his disabled condition, Dr. Singh took and failed to pass the exam on September 27, 2017 and April 17, 2018.[4]

**F.  Dr. Singh Seeks Treatment for his Depression and PTSD, But Remains Severely Disabled When He Takes the Step-3 Exam for the Fifth Time**

40.     In August 2021, Dr. Singh finally sought medical help. He was formally diagnosed with post-traumatic stress disorder – F43.1 in the International Classification of Diseases, Tenth Revision ("ICD-10") – and he began working intensively with Dr. Markus Rogan, PsyD, to address the disorder, rehabilitate, and learn to recognize and control the debilitating symptoms.

41.     Over the next two years, Dr. Singh spent more than 750 hours in therapy with Dr. Rogan. Each month, Dr. Singh was scored on the Beck Depression Inventory (BDI) and Beck Anxiety Inventory (BAI), perhaps the most widely used psychometric tests for measuring the severity of depression and anxiety, respectively.

42.     For the BDI, scores of 10 and under are considered normal. Scores from 11 to 16 indicate a mild mood disturbance. Scores between 17 and 20 show borderline clinical depression. Scores between 21 to 30 reflect moderate depression. Scores between 31 and 40 show severe depression. Scores over 40 indicate extreme depression. In August 2021, Dr. Singh's first month in treatment with Dr. Rogan, he scored a 39 – at the very high end of "severe depression," bordering on "extreme depression."

---

[4] Based on having failed to pass the Step 3 examination prior to the 2017 Incident, his final attempt two attempts during his disability exhausted his attempt limit under the new four-attempt restriction that went into effect July 1, 2021 and applied retroactively to retroactively bar him from any further attempts.

43.     At this time, Dr. Singh's severe illness made it impossible for him to make an informed judgment about how to proceed professionally.  Believing he had no choice but to "push through" his illness and make another attempt to take the Step-3 examination, he asked Defendants to permit him to make a fifth attempt.  Defendants granted his request, and he took the Step-3 examination for a fifth time on August 23, 2022.

44.     At the time he took the Step 3 exam for a fifth time, Dr. Singh scored a 36 on the BDI, well into the "severe depression" zone.  Despite his severe disability, he scored a 197 on the Step-3 examination, just one point shy of the 198 score required to pass.

**G. Dr. Singh Recovers from His Disability and Requests to Retake the Step-3 Exam as a Reasonable Accommodation**

45.     After failing his fifth attempt at the Step-3 examination by one point, Dr. Singh continued his medical treatment, which thankfully proved successful.

46.     By July 2023, Dr. Singh scored an 11 on the BDI, at the low end of the "mild mood disturbance" category and just one point above the threshold for "normal."

47.     For the BAI, scores of 21 and below are considered "low anxiety."  Scores between 22 and 25 reflect moderate anxiety.  Scores of 36 and above indicate concerning levels of anxiety.  In August 2021, Dr. Singh scored a 45.  In August 2022, when he failed his fifth attempt at the Step-3 exam, he scored a 55.  By July 2023, Dr. Singh's score was down to a 9.

48.     Upon achieving this milestone in his recovery, Dr. Singh asked Defendants, as a reasonable accommodation for his disability, to retake the Step-3 exam now that the severe PTSD he suffered during his previous attempts will no longer impact his preparation and performance.

49.     Defendants process and evaluate requests for test accommodations on behalf of the USMLE program. As indicated on the USMLE's website, "[t]he purpose of accommodations

13

is to provide equal access to the USMLE testing program . . . . The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities . . . . Determination of whether an individual is substantially limited in functioning as compared to most people is based on an individualized assessment . . . ."

50.     In order to document a need for accommodations, the application used to request testing accommodations instructs applicants to submit: (a) a personal statement describing the applicant's disability, as well as its impact on daily life and educational functioning; (b) supporting documentation such as psychological evaluations, medical records, etc.; and (c) a complete and comprehensive evaluation by a treating professional that is typewritten on letterhead and signed, and indicates the professional's qualifications. The application also asks applicants to specifically list the "current DSM/ICD diagnosis/diagnoses" for which they are requesting accommodations.

51.     The website includes a special section providing additional guidelines for individuals seeking accommodation for "psychiatric disorders." That section states that such an applicant should also include "a report of evaluation by a qualified professional" providing a "comprehensive psychiatric or psychological evaluation" that includes: (i) "a description of the presenting problems," (ii) "information about the individuals' current daily life activities," (iii) "relevant aspects of the individual's history," and (iv) a discussion of the results from "an appropriate assessment battery" using "common tests and measures" that may include the Beck Depression Inventory and Beck Anxiety Inventory.

52.     According to the USMLE website, requests for accommodation are "reviewed by one or more psychological or medical professionals, depending on the basis of [the applicant's] request."

**H.  The Denial of Dr. Singh's Request for Accommodation**

53.     While the accommodation process typically requires that the applicant first register for the examination before submitting the accommodation request, that was not possible for Dr. Singh. Because he had reached the maximum number of attempts for the Step 3 examination, he was blocked from completing the necessary registration.

54.     On August 25, 2023, despite having been unable to register for the Step 3 examination, Dr. Singh submitted his formal Request for Test Accommodation by email to disabilityservices@nbme.org, as instructed by the USMLE website's accommodation pages.

55.     Consistent with USMLE Guidelines, Dr. Singh's Request included: (a) a cover letter by his attorney; (b) the completed and signed USMLE Request for Test Accommodation form; (c) Personal Statement of Christopher K. Singh M.D.; (d) signed statement of Dr. Singh's treating physician, Dr. Naheed Alli, MD, FHM; (e) signed statement of Dr. Singh's treating psychotherapist, Dr. Markus Rogan, PsyD, LMFT, which enclosed Dr. Singh's scoring over two years of regular monthly testing on the Beck Depression Inventory and Beck Anxiety Inventory (among the most widely used and highly regarded psychometric tests for measuring the severity of depression and anxiety, respectively); and (f) Dr. Singh's certified transcript from USMLE testing and Medical Professional Information Profile containing verified academic transcripts and proof of completion of post-graduate training.

56.     Dr. Singh anticipated a lengthy wait, based on the USMLE's notification that processing of the request would take at least 60 business days. To his dismay, however, Dr. Singh received a response just five days later – a five-sentence response denying the request without any substantive evaluation or explanation. According to the Office of the USMLE Secretariat, Dr. Singh's request would not even be evaluated "because he is ineligible to apply for or take

15

USMLE" due to having reached the attempts limit (i.e., regardless of whether those attempts were made while Dr. Singh was disabled).

57.     On information and believe, Defendants never reviewed any of the materials submitted with Dr. Singh's request for accommodation; nor did Defendants interview Dr. Singh or otherwise conduct their own independent evaluation of Dr. Singh's disability and request for accommodation.

58.     Notably, Defendants justified reducing the limit on attempts for each Step from six to four on the basis that it was "uncommon" for applicants to pass on the fifth or sixth attempt.  This justification has no basis where, as here, a documented disability prevented the applicant from performing during prior test administrations.

### I.   Defendants Offer Another Opportunity for Review, Only to Once Again Deny the Request without Explanation.

59.     In March 2024, counsel for Dr. Singh delivered a draft of this complaint to counsel for Defendants, requesting an opportunity to discuss Dr. Singh's request, with the hope of reaching a resolution of this dispute without having to file the complaint.

60.     Counsel advised that the "Composite Committee" was a joint committee of Defendants' high-ranking officials, which met regularly on matters related to the USMLE exam. According to counsel, the Composite Committee would be the best forum for addressing Dr. Singh's request, and that the next regularly meeting of the Composite Committee was scheduled for June 6, 2024. Counsel invited Dr. Singh to submit any materials in advance of the meeting, so that the Composite Committee could discuss the matter.

61.     The parties entered into a formal, written "Tolling Agreement" concerning any potential statute of limitations issues, and thereafter Dr. Singh once again submitted extensive documentation of both his academic record and his disability, and this time also provided letters

16

of support from the New York State Medical Board, New York State Assemblymen David I. Weprin, and United States Representative Thomas R. Suozzi.

62.     On July 3, 2024, Dr. Singh received a one-page response from Defendants, once again denying his request without any explanation. While the letter represents that the Composite Committee "carefully considered" the materials Dr. Singh submitted, the letter states only that the "current USMLE policy of the four-attempt limit and one United States medical licensing authority sponsorship exception will not be changed to allow for any additional exceptions." The letter offers no substantive bases, in law or in policy, for its decision, nor any other insight into the nature of the Composite Committee's supposed "careful consideration."

63.     Without the requested accommodation, Dr. Singh will be unable to demonstrate his actual knowledge, skills and abilities on the USMLE Step 3 examination. Moreover, as a direct and proximate result of Defendants' refusal to evaluate and grant the requested accommodation, Dr. Singh will be unable to complete the requirements necessary for licensure as a medical doctor and will thus be deprived of the ability to pursue the career of his choosing despite having spent almost half of his life and a fortune pursing it, all because Defendants refused to accommodate the severe PTSD he suffered after a horrific and tragic life event without so much as even considering the merits of his request.

**J.   Despite Everything, Dr. Singh Remains Committed to Medicine**

64.     Despite being denied the requested accommodation, and facing the reality that this lawsuit may be his only remaining path toward becoming a fully licensed physician, Dr. Singh has not lost his passion for medicine.

65.     Dr. Singh enrolled in the in-center, live Kaplan review course for the USMLE Step 3 exam, and is also participating in private one-on-one tutoring and strategy sessions to

review and analyze his performance on mock examinations, including metrics on question analysis and approach to difficult mock patient scenarios, in the hope that he is granted the opportunity to retake the exam.

66.     Additionally, after considerable effort, Dr. Singh secured a position as Medical Director Consultant for Better Health Management, located in New York.  In this position, Dr. Singh is responsible for medical recruitment of providers for the health network, marketing strategies, and site evaluation of affiliated clinics across New York and the greater tri-state area. While this is not a physician position, Dr. Singh agreed to take the job so that he could remain active in the field in whatever capacity possible, and gain experience in a different aspect of medicine that he believes will help him become a more well-rounded physician once given the opportunity to re-take, and pass, the USMLE Step 3 examination.

*   *   *

67.     As a direct and proximate result of Defendants' illegal conduct, including their failure and refusal to grant Dr. Singh's request for a reasonable accommodation, Dr. Singh has suffered damage and will continue to suffer irreparable harm. Among other things, Dr. Singh has been delayed in becoming a fully licensed physician, has lost job opportunities, and his ability to obtain valuable and prestigious positions in the future has also been damaged. Dr. Singh has also incurred expenses in the form of attorneys' fees and related costs.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

68.     Dr. Singh incorporates by reference paragraphs 1-61 of this Complaint as though fully set forth herein.

69.     Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C.

§ 12102. Under the authority of 42 U.S.C. § 12134, the Department of Justice promulgated

regulations including at 28 CFR § 35.104 that include "learning" and "work" within the

definition of major life activities.  The "substantially limited" standard for affected major life

activities is established when "the individual's important life activities are restricted as to the

condition, manner, or duration under which they can be performed in comparison to most

people." 28 CFR, pt. 36, App. B; 29 C.F.R. § 1630.2(j). As intended by Congress, the definition

of disability expressed in the ADA "shall be construed in favor of broad coverage of individuals .

. . to the maximum extent permitted . . . ." Id.; 42 U.S.C. § 12102(4)(A).

70.     Dr. Singh is an individual who during the relevant time period had a disability as

defined by the ADA, because he had a mental impairment that substantially limited one or more

of his major life functions, including concentrating on, thinking about, preparing for, and taking

the USMLE Step 3. 42 U.S.C. § 12102(2)(A). Dr. Singh's condition, which has been diagnosed

through testing, examination, and evaluation by experts in the field, constitutes a disability

within the meaning of the ADA.

71.     Title III of the ADA prohibits discrimination against persons with disabilities by

private entities that administer professional examinations such as the USMLE Step 3, as follows:

> Any person that offers examinations or courses related to applications, licensing,
> certification, or credentialing for secondary or post-secondary education,
> professional, or trade purposes shall offer such examinations or courses in a place
> and manner accessible to persons with disabilities or offer alternative accessible
> arrangements for such individuals. 42 U.S.C. § 12189.

72.     Private entities such as Defendants must ensure that examinations like the

USMLE are selected and administered "so as to best ensure that, when the examination is

administered to an individual with a disability . . . the examination results accurately reflect the

individual's aptitude or achievement level or whatever other facto the examination purports to

measure, rather than reflecting the individual's [disability] . . . ." 28 C.F.R. § 36.309(b)(1)(i). Notably, this "best ensures" standard is more expansive than the "reasonable accommodation" standard typically addressed in ADA jurisprudence, requiring "a level playing field in the administration of professional exams," and that an entity administering such an examination provides impacted test-takers with an accommodation that is at least "as effective" as her preferred accommodation. *Jones v. Nat'l Conf. of Bar Examiners*, 801 F.Supp. 2d 270, 284-85 (D. Vt. 2011), appeal dismissed as moot, 476 Fed. Appx. 957 (2d Cir. 2012) (requiring defendant to provide plaintiff with her requested accommodations to "best ensure" that plaintiff's "knowledge . . . is tested . . . rather than the extent to which Plaintiff is able to overcome her uncontested disabilities."); *Bonnette v. District of Columbia Ct. of Appeals*, 796 F. Supp. 2d 164, 183 (D.D.C. 2011) (holding that defendants must offer plaintiff an accommodation as effective as her preferred accommodations unless the defendant can show that plaintiff's preferred accommodations would fundamentally alter the nature of the examination or constitute an undue burden).

73.     Title III further states in pertinent part, "It is discriminatory to fail to make reasonable modification to policies, practices, or procedures when such modifications are necessary to afford such goods [and] services . . . to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

74.     Defendants are covered by the ADA pursuant to 42 U.S.C. § 12189 in its capacity as the administrator of the USMLE Step 3.

75.     Pursuant to 28 C.F.R. § 36.309(b), Defendants are required to assure that any examination:

is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual or

speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting he individual's impaired sensory, manual, or speaking skills . . . .

76.     As noted above, Dr. Singh had a disability that substantially limited, among other things, his ability to focus and concentrate such that he was unable to adequately prepare for or take the Step 3 examination in the same manner as most people, and certainly in comparison to his peers, other medical school graduates taking the USMLE Step 3 exam.  His disability also substantially limited his ability to consider other options besides attempting to push through his condition and take the Step 3 examination while disabled.

77.     Failure in passing the USMLE Step 3 exam necessarily precludes an individual from obtaining medical licensure necessary for employment as a medical doctor anywhere in the United States. Successful passing of the USMLE Step 3 exam is a necessary prerequisite to licensure to practice medicine in the United States. Thus, Dr. Singh's entire future livelihood as a medical doctor rests on passing this exam, as does his ability to provide a financially stable household for his wife and two young daughters.

78.     Dr. Singh made formal written request for reasonable accommodation for his disability in connection with taking the USMLE Step 3 exam, i.e., one additional opportunity to take the exam beyond the stated limit now that he is no longer disabled.

79.     Defendants' refusal to provide the reasonable accommodation Dr. Singh requested for the USMLE Step 3 exam constitutes an illegal failure to accommodate a disabled person in violation of the ADA. Defendants' discriminatory practices as they relate to Dr. Singh include, but are not limited to:

a.      Failure to grant the requested accommodation when Dr. Singh submitted the requisite documentation;

21

b.      Failure to give considerable weight (or, apparently, any weight) to Dr.

Singh's expert evaluators;

c.      Failure to provide a clear and legitimate basis for denial of the

accommodation;

d.      Failure to engage in good faith in the interactive process to consider and

implement effective accommodation to Dr. Singh's disability;

e.      Failure to conduct a proper review and apply appropriate legal standards

to Dr. Singh's request for accommodations; and

f.      failure to "best ensure" that the administration of the USMLE Step 3

examination accurately reflects Dr. Singh's aptitude or achievement level, or

whatever other factors this examination purports to measure, rather than reflecting

Dr. Singh's impaired skills at a time when he was an individual with a disability,

as that phrase is understood and contemplated by the ADA.

80.     Dr. Singh will be irreparably harmed if Defendants continue their illegal refusal to

provide him the reasonable accommodation as requested.  Unless this Court grants injunctive

relief prohibiting the continued violation of Dr. Singh's ADA rights and compelling Defendants

to provide the requested accommodation, Dr. Singh's medical career will be terminated before it

begins despite his investment of many years of hard work and sacrifice and hundreds of

thousands of dollars successfully obtaining a top notch medical education.

81.     Defendants will not be harmed if the Court grants the requested injunctive relief.

Thus, the balancing of harm favors granting the requested relief.

82.     The public interest will be served by granting the requested relief. The ADA was

enacted as a matter of public policy to ensure that disabled persons are treated fairly and

provided with equal opportunities to those persons in the community without disabilities. Additionally, there is a well-documented shortage of medical doctors in this District and throughout the country, such that granting the requested relief will give Dr. Singh the opportunity to re-take the USMLE Step 3 Exam and if he passes alleviate the physician shortage. The public interest will not be served by allowing Defendants to continue its unlawful refusal to provide Dr. Singh with the ADA accommodation to which he is justly entitled.

83.     As a result of Defendants' violation of the ADA, Dr. Singh has suffered or will suffer great injury, including but not limited to loss of professional opportunity to engage in his career of choice, and the resulting impairment of his ability to provide financially for his family in the career he spent half his life training to pursue.

84.     In denying Dr. Singh's request for reasonable accommodation – without even substantively evaluating the request – Defendants violated the ADA and have done so while acting maliciously or with reckless indifference for Dr. Singh's rights under the ADA.

85.     As a result of Defendants' violation of the ADA, Dr. Singh is entitled to and hereby requests that the Court enter a permanent injunction (i) directing that Defendants immediately cease and desist in their refusal to accommodate Dr. Singh's request on the USMLE Step 3 Exam and (ii) ordering that Defendants comply with the ADA by allowing Dr. Singh the requested accommodation of one additional attempt to pass the Step 3 Exam now that he has learned and mastered the coping mechanisms necessary to manage his disability and maintain high function.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

86.     Dr. Singh incorporates by reference paragraphs 1-85 of this Complaint as though fully set forth herein.

23

87.     Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency . . . ." 29 U.S.C. § 794(a).

88.     Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government, or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." 29 U.S. C. § 794(b)(1).

89.     Such federally funded programs and activities must provide aids and services that "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

90.     Dr. Singh is informed and believes, and based thereon alleges, that Defendants receive federal grants, contracts, and other financial assistance, thereby subjecting themselves to the requirements of Section 504.

91.     Dr. Singh is a qualified individual with a disability under Section 504.

92.     Defendants have, solely by reason of Dr. Singh's disability, excluded Dr. Singh from participation in, denied him the benefits of, and otherwise discriminated against him in their services, programs, or activities.

93.     Defendants' actions set forth more fully above and incorporated herein constitute intentional discrimination on the basis of disability in violation of Section 504.

94.     The actions by Defendants were done intentionally or with deliberate indifference to the protected rights of Dr. Singh.

95.     As a proximate result of Defendants' discrimination, Dr. Singh suffers and continues to suffer harm including but not limited to actual monetary loss, future monetary loss, and other injuries such as embarrassment, frustration, emotional distress, humiliation, and denial of equal treatment and access.

96.     As a result of Defendants' violation of the Section 504, Dr. Singh is entitled to and hereby requests that the Court enter a permanent injunction (i) directing that Defendants immediately cease and desist in its discrimination against Dr. Singh and (ii) ordering that Defendants comply with Section 504 by allowing Dr. Singh the requested accommodation of one additional attempt to pass the Step 3 Exam now that he has learned and mastered the coping mechanisms necessary to manage his disability and maintain high function.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW**

97.     Dr. Singh incorporates by reference paragraphs 1-96 of this Complaint as though fully set forth herein.

98.     The New York State Human Rights Law, NY CLS Exec. § 296 ("NYSHRL"), makes it an unlawful discriminatory practice "for any person, being the owner, lessee, propriety, manager, superintendent, agent, or employee of any place of public accommodation, resort or amusement, because of  . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . ." The NYSHRL clarifies that "discriminatory practice" includes "a refusal to make reasonable

modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

99.     The NYSHRL likewise makes it an unlawful discriminatory practice "for an educational institution to deny the use of its facilities to any person otherwise qualified . . . [based on] disability . . . ."

100.    During the relevant time period, Dr. Singh was a disabled person within the meaning of the NYSHRL.

101.    Defendants have discriminated against Dr. Singh based on his disability, by denying his request for an accommodation as described herein, depriving Dr. Singh of an equal opportunity to demonstrate his aptitude and achievement level on the USMLE Step 3 examination, and otherwise depriving Dr. Singh of the privileges and advantages of taking the USMLE Step 3 examination in a discriminatory-free environment.

102.    Defendants have identified no fundamental alteration of their respective natures if the accommodation requested by Dr. Singh were granted, nor does any such fundamental alteration exist.

103.    As a proximate cause of Defendants' discrimination, Dr. Singh has suffered or will suffer great injury, including but not limited to loss of professional opportunity to engage in his career of choice, and the resulting impairment of his ability to provide financially for his family in the career he spent half his life training to pursue.

104.    As a result of Defendants' violation of the NYSHRL, Dr. Singh is entitled to and hereby requests that the Court enter a permanent injunction (i) directing that Defendants

26

immediately cease and desist in their refusal to accommodate Dr. Singh's request on the USMLE Step 3 Exam and (ii) ordering that Defendants comply with the NYSHRL by allowing Dr. Singh the requested accommodation of one additional attempt to pass the Step 3 Exam now that he has learned and mastered the coping mechanisms necessary to manage his disability and maintain high function.

## **JURY DEMAND**

Dr. Singh demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER**

WHEREFORE, Dr. Singh demands and prays that judgment be entered in his favor and against Defendants, and each of them, as follows:

a.    Entry of an injunction directing Defendants and their respective officers, employees, and agents to cease discriminating against Dr. Singh by granting his request for reasonable accommodation on the USMLE Step 3 examination, based upon his ample submission of professional evaluative and personal corroborative documentation and evidence;

b.    An award to Dr. Singh of compensatory damages as may be proven at trial;

c.    An award to Dr. Singh of his reasonable attorneys' and expert's fees, pursuant to applicable law, including, but not limited to, 42 U.S.C. § 12188, 42 U.S.C. § 2000a-3, and the NYSHRL;

d.    An award to Dr. Singh of all costs of this action; and

e.    An award to Dr. Singh of such other and further relief as the Court may deem just and proper.

DATED:  July 30, 2024                     Respectfully submitted,

ROTTENBERG LIPMAN RICH, P.C.

By: _C. Zachary Rosenberg_
      C. Zachary Rosenberg, Esq.
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080
zrosenberg@rlrpclaw.com

*Attorneys for Plaintiff, Christopher K. Singh*

28