UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHRISTOPHER K. SINGH,

                Plaintiff,

      -against-

NATIONAL BOARD OF MEDICAL
EXAMINERS et al,

              Defendant.

**MEMORANDUM AND ORDER**
24-cv-05320

---

LASHANN DEARCY HALL, United States District Judge:

Dr. Christopher Singh ("Plaintiff") brings the instant action against the National Board of

Medical Examiners ("NBME") and the Federation of State and Medical Boards of the United

States, Inc. ("FSMB") (collectively "Defendants") asserting claims of discrimination in violation

of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the

New York State Human Rights Law.  Defendants move, pursuant to Rules 12(b)(2) and 12(b)(6)

of the Federal Rule of Civil Procedure, to dismiss the Complaint in its entirety.

### BACKGROUND[1]

Plaintiff is a graduate of Albert Einstein College of Medicine where he graduated with his

Doctor of Medicine degree in June 2011.  (Am. Compl. ¶ 23, ECF No. 17.)  In July 2011,

Plaintiff began post-medical school training at Montefiore Medical Center Orthopaedic Surgery

Program and completed this training in June 2017.  (*Id.* ¶ 24.)  In total, Plaintiff has completed

---

[1] The following facts are taken from the Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

approximately sixteen years of post-high school education preparing to practice medicine.  (*Id.* ¶ 3.)

Defendants sponsor the USMLE, which is a standardized examination used to evaluate applicants' competence for the purposes of medical licensure in the United States and its territories.  (*Id.* ¶ 25.)  To be licensed, a candidate must successfully complete each of the three components of the USMLE, commonly referred to as "Steps."  (*See id.* ¶¶ 25-26.)  Defendants generally allow medical students and professionals a maximum of four attempts to pass each Step.  (*Id.* ¶ 28.)  However, as an exception, Defendants permit one state medical licensing authority sponsorship exception (the "Licensing Authority Exception"), which, if approved, provides an additional opportunity to take the USMLE Steps for a maximum of five attempts to pass the Step.  (*Id.* ¶ 62.)  Successful passage of the USMLE Step-3 exam is a prerequisite to licensure to practice medicine in the United States. (*Id.* ¶ 78.)

Plaintiff passed the USMLE Step-1 and Step-2 examinations.  (*Id.* ¶¶ 30-32.)  Subsequently, Plaintiff took the Step-3 examination on four occasions but failed to pass.  (*Id.* ¶¶ 39, 39 n.4.)  Pursuant to Defendants' policy, without a Licensing Authority Exception, these four attempts exhausted Plaintiff's opportunity to take the exam further.  (*Id.*)

Some approximately three years later, in August 2021, Plaintiff was formally diagnosed with post-traumatic stress disorder stemming from a home invasion that occurred four years prior in 2017.[2]  (*Id.* ¶ 40.)  Over the next two years, Plaintiff spent more than 750 hours in therapy. (*Id.* ¶ 41.)  At some point, Plaintiff determined that he had to "push through" his illness and make another attempt to pass the Step-3 examination.  (*Id.* ¶ 43.)  Plaintiff requested to take the

---

[2] The Amended Complaint describes the home invasion as occurring in "2015," but this appears to be a typographical error.  (Am. Compl. ¶ 33.)  The Court has updated the year to be 2017 based on Plaintiff's later reference to the date as the "2017 Incident." (*Id.* at ¶ 39 n.4.)

Step-3 examination for a fifth time under the Licensing Authority Exception.  (*Id.* ¶ 43.)

Defendants granted his request.  (*Id.*)  And, on August 23, 2022, Plaintiff took the Step-3

examination, but he, again, failed to achieve a passing score.  (*Id.* ¶ 44.)  With this final attempt,

Plaintiff had fully exhausted his opportunities to pass Step-3.  (*Id.* ¶ 56.)

Throughout this time, Plaintiff continued his medical treatment for PTSD.  (*Id.* ¶ 45.)  By

July 2023, Plaintiff's Beck Anxiety Inventory ("BAI") score had decreased significantly.  (*Id.* ¶

47.)  A score of twenty-one and below are considered "low anxiety," and at this time, Plaintiff's

BAI score was a nine.  (*Id.*)  According to the Amended Complaint, Plaintiff is no longer

disabled.  (*Id.* ¶ 79.)  On August 25, 2023, Plaintiff submitted a formal Request for Test

Accommodation to Defendants.  (*Id.* ¶ 54.)  Defendants responded on August 30, 2023, to

Plaintiff's request and notified him that his request would not be evaluated "because he is

ineligible to apply for or take USMLE" due to having reached the attempts limit.  (*Id.* ¶ 56.)

Plaintiff's attorney subsequently contacted Defendants' counsel in an effort to persuade

Defendants to allow Plaintiff a sixth attempt to take the Step-3 exam.  (*Id.* ¶¶ 59-60).

Defendants' attorney invited Plaintiff to submit any materials in support of his request to the

Composite Committee, which is a joint committee of Defendants' high-ranking officials that

meet regularly on matters related to the USMLE exam.  (*Id.* ¶¶ 59-60.)  Plaintiff submitted his

materials and, on July 3, 2024, the Composite Committee notified Plaintiff that the "current

USMLE policy of the four-attempt limit and one United States medical licensing authority

sponsorship exception will not be changed to allow for any additional exceptions."  (*Id.* ¶ 62.)

## STANDARD OF REVIEW

"In opposing a motion to dismiss for lack of personal jurisdiction, 'the plaintiff bears the

burden of establishing that the court has jurisdiction over the defendant.'" *Grand River Enters.*

3

*Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  A motion to dismiss under Rule 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings" and therefore "all pertinent documentation submitted by the parties may be considered in deciding the motion." *Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-CV-5663, 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001). "Where the issue [of personal jurisdiction] is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A. I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

## DISCUSSION

### I.      Personal Jurisdiction

In assessing Defendants' motion to dismiss for lack of personal jurisdiction, the Court must engage in a two-part inquiry.  *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 467 (S.D.N.Y. 2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023).  *First*, the Court must consider whether "there is 'a statutory basis for exercising personal jurisdiction.'"  *Id.* (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)).  "*Second*, the court must decide whether 'the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution.'" *Id.* (quoting *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam)).  "The two part analysis is sequential; if the district court finds no basis for long arm jurisdiction, it need not engage in a

4

federal due process analysis." *Ilsa Mach. Corp. v. Satec (U.S.A.) LLC*, No. 07-CV-32(JS)(WDW), 2008 WL 11417738, at *2 (E.D.N.Y. Mar. 31, 2008) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (noting that courts must first confirm whether there is a statutory basis to exercise personal jurisdiction before engaging in a federal due process analysis).

With respect to statutory jurisdiction, there are "two categories of personal jurisdiction: general and specific personal jurisdiction.  General, all-purpose jurisdiction permits a court to hear any and all claims against an entity.  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks and citations omitted).

Plaintiff does not maintain that the Court should exercise general jurisdiction over Defendants.  (*See* Pl.'s Mem. L. Opp'n Def.'s Mot. Dismiss ("Pl.'s Mem."), ECF No. 19.)  Rather, Plaintiff contends that the Court's jurisdiction is proper under either CPLR § 302(a)(1) and (a)(3).  (Pl.'s Mem. at 3-6.)  The Court disagrees.

## A.    Personal Jurisdiction Under CPLR § 302(a)(1)

"New York's long-arm statute permits a court to exercise specific jurisdiction over a non-domiciliary if the defendant [or its agent] transacts business within the state and the cause of action arises from that transaction." *Doe v. Nat'l Conf. of Bar Examiners*, 2017 WL 74715, at *7 (E.D.N.Y. Jan. 6, 2017) (internal quotation marks omitted) (citing CPLR § 302(a)(1); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)).  "A defendant transacts business in New York if it has 'purposely availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its law.'" *Stroud v. Tyson Foods, Inc.*,

5

91 F. Supp. 3d 381, 389 (E.D.N.Y. 2015) quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).

Here, Plaintiff alleges that Defendants "engage in business in New York and this judicial district . . . ." (Am. Compl. ¶ 13.)  And, Plaintiff further alleges the Court has personal jurisdiction over Defendants because they "[administer] the USMLE to New York residents who intend to proceed with licensure in New York," "hold a USMLE testing administration site in New York," and "[t]he State of New York also requires applicants . . . to pass the USMLE in order to qualify for a fully independent practitioner medical license." (*Id.* ¶ 17.)  Furthermore, Plaintiff asserts that "this action arises from those business activities because Plaintiff intends to take the Step-3 examination in New York." (*Id.* ¶ 13.)  Defendants take the position that "[t]here is no basis for specific jurisdiction," (Defs.' Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 6, ECF No. 18), but make no argument in its motion to dismiss nor reply brief explaining why their administration of the USMLE in New York does not constitute "transacting business."

Accepting Plaintiff's allegations as true, the Court finds Defendants "purposefully availed itself of the privilege of conducting activities within New York" by administering the USMLE examination within the state.  This fact is not in dispute.  Indeed, Defendants' motion confirms as a matter of "fact that the USMLE is administered in New York, through a third-party vendor that operates test centers in New York." (Defs.' Mem. at 6.); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) ("It is well established that a defendant can purposefully avail itself of a forum by directing its agents or distributors to take action there." (internal citation and quotations omitted)).  Accordingly, Defendants transact business in New York.  This does not end the Court's inquiry, however.  As discussed, *supra*, the Court must also find that the "cause of action arises from that transaction" in order exercise

6

personal jurisdiction. *Nat'l Conf. of Bar Examiners*, 2017 WL 74715, at *7. The Court makes no such finding.

### 1. The Alleged Discrimination Does Not Arise from Defendants' Business Transaction

A suit will be deemed to have arisen out of a party's activities in New York "if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012) (internal quotations and citation omitted). Personal jurisdiction "requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 16869 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 900 (2012)). Whether a plaintiff's claim arises from a defendant's New York contacts depends upon "the nature and elements of the particular causes of action pleaded." *Id.* at 169 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 340 (2012)). "However, Section 302(a)(1) 'does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute.'" *Id.* (quoting *Licci*, 20 N.Y.3d at 341).

Here, Defendants maintain that no element of Plaintiff's claims arise from its contacts with New York. Put differently, as Defendants argue, "[Plaintiff's] claims do not relate to or arise from his taking the test at a New York test center. [Plaintiff's] disability discrimination claims instead relate to decisions made initially out of NBME's offices in Pennsylvania based on an 'accommodation' request that Plaintiff directed to NBME's offices in Pennsylvania, and then

7

by the USMLE Composite Committee at a location that was outside of New York." (Def.'s Mem. at 11.) This seems plain.

Nonetheless, in an effort to convince the Court that jurisdiction is proper under CPLR § 302(a)(3), Plaintiff advances two arguments; neither of which are particularly persuasive. *First*, Plaintiff argues that Defendants denied him "the opportunity to take the USMLE Step-3 exam in New York, where Defendants offer the exam." (Pl.'s Mem. at 4.) *Second*, Plaintiff argues that "Defendants also require candidates seeking any exemption to their Attempt Limit policy to submit an explicit request from a state medical licensing authority, and Plaintiff included such a request from the New York State Medical Board . . . ." (*Id.*) Plaintiff, therefore, contends that there is "a 'relatedness' between (a) Defendants administering the USMLE exam in New York and requiring a petition from a state medical board to consider a disability accommodation request, and (b) Defendants' failure to accommodate Plaintiff's request to take the exam in New York and its rejection of the New York State Medical Board's request." (Pl.'s Mem. at 4.) Not so.

At bottom, Plaintiff's claims challenged Defendants' determination that he was ineligible to take the Step-3 exam because he exceeded the maximum attempts. That decision was made by both the NBME and Composite Committee outside of the State of New York. That Plaintiff desired to take the test in New York or that he submitted supporting materials from an entity in New York is of no moment. Plaintiff alleges no facts to support a claim that the discriminatory act occurred in New York. Accordingly, in the absence of articulable nexus between the two, the Court may not properly exercise personal jurisdiction.

This conclusion is consistent with previous holdings in similar cases. For example, in *Doe v. Nat'l Conf. of Bar Examiners*, , a court in this district held that personal jurisdiction was

8

lacking over the National Conference of Bar Examiners ("NCBE") where the plaintiff—who resided in New York and was seeking admission to the District of Columbia bar—challenged NCBE's refusal to process her character-and-fitness application.  No. 1:16-CV-264 (PKC), 2017 WL 74715, at *10.  There, the court reasoned that plaintiff's "claims arise from the NCBE's rejection of Plaintiff's character and fitness application at the NCBE's offices in *Wisconsin . . .* and *not* from mailings to [NCBE] or reference checks in New York."  *Id.* (emphasis in original).  Accordingly, the court found plaintiff failed to plead "an 'articulable nexus' between Defendants' alleged business activities in New York and Plaintiff's claims."  *Id.* (citation omitted.)  The facts in this case require the same conclusion.

The Court is not convinced that Defendants' refusal has an articulable nexus or a substantial relationship to the administration of the test in New York.  The relationship between Defendants' refusal and the test in New York only exists because Plaintiff is a New York resident who desires to re-test in New York.  This is coincidental to Defendants' refusal to grant Plaintiff an exception, and coincidental connections are insufficient to support specific jurisdiction*.  Id*. (citing *Torres v. Monteli Travel, Inc.*, 2011 WL 2670259, at *8 (E.D.N.Y. July 7, 2011)).  Moreover, Plaintiff's submission of a request from the New York State Medical Board in pursuit of an accommodation reflects his own conduct and not Defendants' contact with New York.  Therefore, this fact is also insufficient to establish an articulable nexus between Defendants' business transaction and Plaintiff's claims.  *See id.* ("Ultimately, the analysis must focus on the nature and quality of the individual defendant's contact with the forum and whether such contact has a strong relationship to the claims based on the totality of the circumstances." (citing *Merritt v. Airbus Americas, Inc.*, 2016 WL 4483623, at *2 (E.D.N.Y. Aug. 22, 2016))).

9

Because the cause of action does not arise from Defendants' business transactions in New York, the exercise of personal jurisdiction under CPLR § 302(a)(1) is not proper.

**B.      Personal Jurisdiction Under CPLR § 302(a)(3)**

"In order to establish jurisdiction under [CPLR § 302(a)(3)], a plaintiff is . . . required to demonstrate that (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).  Against that backdrop, it is clear that, as a gating question, the Court must determine "whether plaintiff sufficiently alleged that the [complained of conduct] was 'tortious . . . .'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002).  Here, Defendants argue that Plaintiff's complaints of discriminatory conduct do not constitute a tort permitted for the application of CPLR § 302(a)(3).  (Def.'s Mem. at 7.)  The Court agrees.

Plaintiff alleges that Defendants have engaged in "discriminatory practices" by, *inter alia*, "fail[ing] to grant the requested accommodation when [Plaintiff] submitted the requisite documentation."  (Compl. ¶ 80a.)  However, courts in this circuit, as well as New York state courts, have long held that "discrimination claims are not torts."  *Weerahandi v. Am. Stat. Ass'n*, No. 14 CIV. 7688, 2015 WL 5821634, at *4 (S.D.N.Y. Sept. 30, 2015) (explaining the plaintiff's racial discrimination claims are not torts) (citing *Lane–Weber v. Plainedge Union Free Sch. Dist.,* 213 A.D.2d 515, 516 (N.Y.App.Div.1995) ("[A]n action brought pursuant to [NYSHRL] is not a tort claim.")); *see also Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (distinguishing

tort and discrimination claims: "The certification procedure of § 2679(d)(1) applies only to tort claims, not to discrimination claims under the Human Rights Laws . . . .")  Because Plaintiff's claims of discrimination do not sound in tort, Plaintiff has failed to allege sufficient facts to meet even the first element under CPLR § 302(a)(3).  That is, Plaintiff has not pleaded that Defendant's committed a tortious act outside of New York.  As such, the Court cannot exercise jurisdiction under CPLR § 302(a)(3).

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2026

/s/ LDH_____
LaSHANN DeARCY HALL
United States District Judge

11